<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN BATCHELOR, VICTORIA JOLLEY BACCHUS, DENISA WILSON-AVERY, MILLICENT BAILEY, and DONNA WEEKS,<br><br>Plaintiffs,<br><br>v.<br><br>PROCTER & GAMBLE CO., PROCTER & GAMBLE DISTRIBUTING LLC, CLAIROL, and CLAIROL PROFESSIONAL,<br><br>Defendants. | Civil Action No. 14-2424 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants P&G-Clairol, Inc., The Procter & Gamble Distributing, LLC, and the Procter & Gamble Company (collectively, "Defendants")' motion to dismiss, [CM/ECF No. 10], Plaintiffs Karen Batchelor, Victoria Jolley Bacchus, Denisa Wilson-Avery, Millicent Bailey, and Donna Weeks (collectively, "Plaintiffs")' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to Defendant's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion to dismiss is granted.

**I.     BACKGROUND**

Karen Batchelor ("Batchelor") owns Eminence Hair Design, a hair salon located in Englewood, New Jersey. (Compl., ¶ 30.) Victoria Jolley Bacchus, Denisa Wilson-Avery,

1

Millicent Bailey, and Donna Weeks (collectively, "customer Plaintiffs") were customers of Eminence Hair Design from 2010 to 2012. (*Id.* at ¶ 31.)

Defendants manufacture, sell, distribute, and advertise the product "Clairol Professional premium crème demi permanente Deep Conditioning for healthy shine Soy Complex Ammonia Free hair color" ("Product").[1] Defendants' Product was advertised as being "ammonia free" and able to "nourish, moisturize, hydrate, condition and/or otherwise keep hair healthy and in good condition." (*Id.* at ¶ 34.) Allegedly because of these attributes, Batchelor applied the Product to the customer Plaintiffs' hair. (*Id.*) Prior to their use of Defendants' product, the customer Plaintiffs all had hair that was "in good and healthy condition, texture and elasticity[.]" (*Id.* at ¶ 32.) They were also regular customers of Eminence Hair Design. (*Id.*)

As a consequence of using Defendants' product, the customer Plaintiffs suffered "severe hair loss, hair breakage, hair burn, burns to head and/or scalp, balding, and other such physical injury, emotional/psychological distress [sic] and economic loss" arising out of "corrective treatment, procedures, hair restoration/replacement." (*Id.* at ¶ 35.) Further, they stopped frequenting Eminence Hair Design once they were injured by Defendants' product. (*Id.* at ¶ 36.) Plaintiffs allege that their injuries were caused by the fact that, contrary to the label's representations, Defendants' Product actually contained ammonia. (*Id.* at ¶ 37.) Plaintiffs filed their Complaint on April 15, 2014. [CM/ECF No. 1.] On June 12, 2014, Defendant moved to dismiss Counts I and II of the Complaint as to Plaintiff Karen Batchelor, and Counts III, IV, V, and VI as to all Plaintiffs. [CM/ECF No. 10.]

---

[1] Plaintiffs use the full name of Defendants' product, "Clairol Professional Premium Crème Demi Permanente deep conditioning for healthy shine soy complex ammonia free hair color," every time they mention it in the Complaint. For ease of reading, this Court asks Plaintiffs to write the full name of the Product once and refer to it as "product" thereafter in any future documents they submit to the Court.

2

## II.  LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a) (2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twomblv*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.* Additionally, in evaluating a plaintiffs claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3rd Cir. 1994).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. Rule 9(b) states: "In all averments of fraud or

3

mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This heightened pleading requirement is designed "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Thus, Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how: the first paragraph of any newspaper story" whenever alleging a claim of fraud. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). The Third Circuit has also noted that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Svs., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 576 (D.N.J. 2001)). Where there are multiple defendants, plaintiffs must plead predicate acts of fraud with particularity as to each defendant. *See, e.g., Seville*, 742 F.2d at 791.

### III. DISCUSSION

#### A. Batchelor's Claims Pursuant to the New Jersey Products Liability Act

Plaintiffs' first two causes of action, design defect (Count I) and failure to warn (Count II), are brought under the New Jersey Products Liability Act ("PLA" or "Act"). (Compl., pp. 12, 18.) Defendants move to dismiss these first two counts as to Batchelor because the Complaint does not contain any facts supporting the allegation that she suffered a physical injury caused by the product. This Court agrees.

The PLA defines a product liability action as "'any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for

harm caused by breach of an express warranty.'" *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 62 (2008) (quoting *N.J.S.A.* 2A:58C–1(b)(3)). The Act defines harm as:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."

*Id.* (quoting N.J.S.A. 2A:58C–1(b)(2)). The Supreme Court of New Jersey has interpreted this definition to mean that plaintiffs cannot sue for economic loss under the PLA in the absence of personal physical injury. *Id.* at 65. In *Sinclair,* the Court explained that "the injury portion of the definition [of harm] . . . require[s] [a] 'personal physical' injury, just like there must be a 'personal physical' illness and 'personal physical' death." *Id.* As such, the Supreme Court of New Jersey held in *Sinclair* that patients that had taken defective medicine, but had not suffered any physical harm, could not bring suit under the PLA even though they had incurred costs associated with monitoring the potential damage the defective medicine might have caused them. *Id.*

Plaintiffs argue that Batchelor has properly set forth claims under the PLA because she has suffered property damage. (Pl. Br., 26.) However, they describe this damage as "lost income, lost revenue, lost clients, . . . damage to her reputation, . . . damage to her business reputation, . . . pain and humiliation and emotional distress[.]" (*Id.* at 27.) None of these damages are the result of "physical damage" done to Batchelor's property. N.J.S.A. 2A:58C–1(b)(2). Moreover, Plaintiffs' assertion that Batchelor suffered "mental anguish and emotional distress" is a conclusory statement that is insufficient to demonstrate injury under the PLA. (Compl. at ¶ 36.); *Iqbal,* 556 U.S. at 678 ( "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). As such,

Batchelor has failed to properly plead harm as defined by the PLA. Thus, Counts I and II of the Complaint are dismissed without prejudice as to Batchelor.

### B. Claims Pursuant to the New Jersey Consumer Fraud Act

Count III of Plaintiffs' Complaint asserts a violation of the New Jersey Consumer Fraud Act ("CFA"). To state a claim of under the CFA, a plaintiff must allege that "the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994)). Though the CFA has a broad scope, a plaintiff cannot recast a viable products liability claim as a fraud claim under the CFA. *Sinclair*, 195 N.J. at 65-66 ("claims for harm caused by a product are governed by the PLA irrespective of the theory underlying the claim . . . [D]espite the broad reach we give the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product"). Defendants move to dismiss Count III as to Batchelor because she fails to plead an ascertainable loss. (Def. Br., 8.) They also move to dismiss this Count as to the customer Plaintiffs. They argue that all claims arising out of the customer Plaintiffs' injuries are subsumed by the PLA and cannot be additionally asserted under the CFA. (Def. Br., 7.)

1. Batchelor's CFA claim

To establish ascertainable loss, a plaintiff "must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also Shelton v. Rest..com Inc.*, 543 F. App'x 168, 170 (3d Cir. 2013) (explaining that plaintiffs must allege a "measurable loss" in order to survive a motion to dismiss). A plaintiff must assert facts that show "either an out-of-pocket loss or a demonstration of loss in value." *Dist. 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 530 (D.N.J.

2011). Furthermore, claims under the CFA are held to the higher pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Frederico*, 507 F.3d at 200.

Here, Plaintiffs fail to plead the second element of a CFA claim with particularity. They allege that:

> Plaintiffs used/consumed Defendants' [product] primarily for personal reasons and, as a result of the same, Plaintiffs suffered ascertainable losses/damages/injuries including, but not limited to: physical injury economic loss and/or emotional/psychological injury as a result of Defendants' use and/or employment of their methods, acts, practices and/or omissions set forth and alleged herein.

(Compl. at ¶84.) This assertion, however, does not contain facts that suggest that Batchelor suffered an out of pocket loss by purchasing Defendants' product. In fact, the Complaint fails to allege that Batchelor purchased the Product at all; it alleges only that she "used/consumed" it. Plaintiffs' Complaint also does not contain "demonstration of loss in value." *See Janssen*, 784 F.Supp.2d at 530. Though their Complaint alleges that the customer Plaintiffs stopped frequenting Eminence Hair Design once they were injured by Defendants' product, it does not contain facts setting forth the alleged economic loss with particularity, as required under the higher pleading standard of Federal Rule of Civil Procedure 9(b). For example, it does not allege the date when the customers stopped going to Batchelor's hair salon, how often they used to frequent the business, how much money they spent there, and whether Batchelor herself suffered economic loss or if it was suffered by her business.

Because she has not alleged an ascertainable loss, Batchelor has failed to plead a cause of action under the CFA. Thus, Count III of the Complaint is dismissed without prejudice as to Batchelor.

2. Customer Plaintiffs' CFA Claims

7

Defendants argue that Count III must be dismissed as to the customer Plaintiffs because they cannot recast their products liability claims as fraud claims under the CFA. Plaintiffs do not address this issue in their brief.

"[C]laims for 'harm caused by a product' are governed by the PLA irrespective of the theory underlying the claim.'" *Sinclair*, 195 N.J. at 65. In general, plaintiffs cannot allege a violation of the CFA when the injury they have suffered falls under the scope of the PLA. *See id.* at 66 ("The language of the PLA represents a clear legislative intent that, despite the broad reach we give the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product.").

Here, the customer Plaintiffs allege that they have suffered personal injuries that were caused by Defendants' defective product. They assert valid claims for design defect and failure to warn under the PLA, and they may not separately allege claims arising out of the same injury under the CFA. Therefore, Count III is dismissed with prejudice as to the customer Plaintiffs.

### C. Breach of Express Warranty

Count IV of Plaintiffs' Complaint asserts a claim for breach of express warranty on behalf of both Batchelor and the customer Plaintiffs. In order to establish a claim for breach of express warranty in New Jersey, a plaintiff must allege: "(1) that [the defendants] made an affirmation, promise or description about the product; (2) that this affirmation, promise, or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 721 (D.N.J. 2011) (citations omitted). Defendants argue that Plaintiffs' claim for breach of express warranty fails because they do not set forth sufficient facts to support the second element of this cause of action. This Court agrees.

8

Plaintiffs do not specifically allege in their Complaint that they purchased Defendants' product. For example, there is no clear indication of who purchased Defendants' Product. Was it Batchelor? Was it the corporation? Or was it one of the customers? Instead, what they do claim is that they "used" the Product and that the customer Plaintiffs suffered physical injuries as a result. Though Defendants point out in their brief that the Product's express warranty could not have formed the basis of the bargain because Plaintiffs never claim that they purchased the product, (Def. Br., 11), Plaintiffs do not address this argument. Instead, they state in their brief that the Product was "bought" without citing to one such allegation in the body of the Complaint. (Pl. Br., 35.) As such, Count IV of the Complaint is dismissed without prejudice as to all Plaintiffs.

### D. Punitive Damages Under the PLA

The PLA generally prohibits the award of punitive damages. It states that:

> Punitive damages shall not be awarded if a drug or device . . . which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. §201 et seq. and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the Food and Drug Administration and applicable regulations, including packaging and labeling regulations.

N.J.S.A. 2A:58C–5(c). The statute contains one exception. That exception permits a plaintiff to seek punitive damages "where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the [FDA's] regulations." *Id.* Plaintiffs, however, have not asserted any facts indicating or raising the reasonable inference that Defendants knowingly withheld from or misrepresented information to the FDA, or that Defendant's Product was required to be submitted under the FDA's regulations. Though Plaintiffs argue otherwise in

their opposition brief, they do not cite to any supporting facts alleged in the Complaint. (Pl. Br., 37-38.) Therefore, Count V is dismissed without prejudice.

### E. Emotional Distress

Under New Jersey law, all claims for harm caused by a product, other than breach of an express warranty, are subsumed within the PLA. N.J.S.A. 2A:58C-1. Accordingly, courts have consistently held that the PLA provides the exclusive basis for recovery of such claims and that all other common law actions (other than express warranty claims) have been "subsumed within the Act." See *Tirrell v. Navistar Intern,, Inc.*, 248 N.J.Super. 390, 398-399 (App, Div. 1991); see also *Sinclair*, 195 N.J. at 65 (explaining that "'the Legislature expressly provided in the PLA that claims for 'harm caused by a product' are governed by the PLA 'irrespective of the theory underlying the claim'"). Plaintiffs concede this point. (Pl. Br., 39.) Therefore, Plaintiffs' claims of emotional distress and mental anguish are dismissed with prejudice.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss [CM/ECF No. 10] is granted. Counts I and II are dismissed without prejudice as to Plaintiff Batchelor. Count III is dismissed without prejudice as to Plaintiff Batchelor and with prejudice as to the customer Plaintiffs. Counts IV and V are dismissed without prejudice as to all Plaintiffs. Count VI is dismissed with prejudice as to all Plaintiffs. Plaintiffs may file an Amended Complaint on or before August ____, 2014 to correct the pleading deficiencies identified in Counts I, II, and III as to Plaintiff Batchelor and Counts IV and V as to all Plaintiffs. Plaintiffs' failure to file an Amended Complaint by that date will result in summary dismissal of Plaintiffs' remaining claims *with prejudice.*

An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares
Jose L. Linares
United States District Judge

Dated: July 30, 2014