**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN BATCHELOR, Individually and as owner of Eminence Hair Design, VICTORIA JOLLEY BACCHUS, DENISA WILSON-AVERY, MILLICENT BAILEY, and DONNA WEEKS, and EMINENCE HAIR DESIGN<br><br>Plaintiffs,<br><br>v.<br><br>PROCTER & GAMBLE CO., PROCTER & GAMBLE DISTRIBUTING LLC, CLAIROL, and CLAIROL PROFESSIONAL,<br><br>Defendants. | Civil Action No. 14-2424 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants P&G-Clairol, Inc., The Procter & Gamble Distributing, LLC, and the Procter & Gamble Company (collectively, "Defendants")' motion to dismiss, (CM/ECF No. 25), a substantial majority of Plaintiffs Karen Batchelor, Victoria Jolley Bacchus, Denisa Wilson-Avery, Millicent Bailey, Donna Weeks, and Eminence Hair Design (collectively, "Plaintiffs")' Amended Complaint ("AC")(CM/ECF No. 25) pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to Defendant's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion to dismiss is granted.

## I.   BACKGROUND[1]

Karen Batchelor ("Batchelor") owns Eminence Hair Design ("Eminence"), a hair salon located in Englewood, New Jersey. (AC ¶ 30.) Victoria Jolley Bacchus, Denisa Wilson-Avery, Millicent Bailey, and Donna Weeks (collectively, "customer Plaintiffs") were customers of Eminence Hair Design from 2010 to 2012. (*Id.* at ¶ 31.)

Defendants manufacture, sell, distribute, and advertise the product "Clairol Professional premium crème demi permanente Deep Conditioning for healthy shine Soy Complex Ammonia Free hair color" ("Product").[2] Defendants' Product was advertised as being "ammonia free" and able to "nourish, moisturize, hydrate, condition and/or otherwise keep hair healthy and in good condition." (*Id.* at ¶ 34.) Allegedly because of these attributes, Batchelor applied the Product to the customer Plaintiffs' hair. (*Id.*) Prior to their use of Defendants' product, the customer Plaintiffs all had hair that was "in good and healthy condition, texture and elasticity[.]" (*Id.* at ¶ 32.) They were also regular customers of Eminence Hair Design. (*Id.*)

As a consequence of using Defendants' product, the customer Plaintiffs suffered "severe hair loss, hair breakage, hair burn, burns to head and/or scalp, balding, and other such physical injury, emotional/psychological distress [sic] and economic loss" arising out of "corrective treatment, procedures, hair restoration/replacement." (*Id.* at ¶ 35.) Further, they stopped frequenting Eminence Hair Design once they were injured by Defendants' product. (*Id.* at ¶ 36.) Plaintiffs allege that their injuries were caused by the fact that, contrary to the label's representations, Defendants' Product actually contained ammonia. (*Id.* at ¶ 37.) Plaintiffs filed

---

[1] These facts are taken from Plaintiff's Amended Complaint and are taken as true solely for the purposes of the motion.

[2] Despite the Court's instruction in its previous Opinion, Plaintiffs continue to use the full name of Defendants' product, "Clairol Professional Premium Crème Demi Permanente deep conditioning for healthy shine soy complex ammonia free hair color," every time they mention it in the Amended Complaint. For ease of reading, this Court asks Plaintiffs again to write the full name of the Product once and refer to it as "product" thereafter in any future documents they submit to the Court.

their Amended Complaint on August 22, 2014. [CM/ECF No. 23.] On September 25, 2014, Defendant moved to dismiss a substantial majority of the claims in the Amended Complaint. [CM/ECF No. 25.]

## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Ati. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a) (2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twomblv*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id*. Additionally, in evaluating a plaintiffs claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3rd Cir. 1994).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This heightened pleading requirement is designed "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Thus, Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how: the first paragraph of any newspaper story" whenever alleging a claim of fraud. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). The Third Circuit has also noted that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Svs., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 576 (D.N.J. 2001)). Where there are multiple defendants, plaintiffs must plead predicate acts of fraud with particularity as to each defendant. *See, e.g., Seville*, 742 F.2d at 791.

### III.   DISCUSSION

#### A. Motions Before the Court

#### 1. Defendant's argument

Defendant argues that dismissal is warranted on the following grounds: (1) Ms. Batchelor nor Eminence Hair Design can proceed with a claim under the Product Liability Act; (2) Ms. Batchelor nor Eminence Hair Design adequately pled an ascertainable loss or causation under the Consumer Fraud Act; (3) the Customer Plaintiffs fail to state a claim for breach of express

warranty; and (4) Plaintiffs cannot pursue a claim for punitive damages under the Product Liability Act.

### 2. Plaintiff's opposition

Plaintiffs respond to Defendant's motion by asserting that: (1) Plaintiffs Batchelor and Eminence Hair Design sufficiently pled under the Product Liability Act; (2) Plaintiffs Batchelor and Eminence Hair Design have sufficiently pled a cause of action against Defendants for violation of the New Jersey Consumer Fraud Act; (3) Defendant's motion to dismiss Plaintiffs' cause of action for breach of express warranty should be denied; and (4) Plaintiffs state sufficient facts to plead a cause of action for punitive damages herein.

### B. Design Defect and Failure to Warn under the PLA

The PLA defines a product liability action as "'any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.'" *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 62 (2008) (quoting *N.J.S.A.* 2A:58C–1(b)(3)). The Act defines harm as:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."

*Id.* (quoting N.J.S.A. 2A:58C–1(b)(2)). The Supreme Court of New Jersey has interpreted this definition to mean that plaintiffs cannot sue for economic loss under the PLA in the absence of personal physical injury. *Id.* at 65. In *Sinclair*, the Court explained that "the injury portion of the definition [of harm] . . . require[s] [a] 'personal physical' injury, just like there must be a 'personal

physical' illness and 'personal physical' death." *Id.* As such, the Supreme Court of New Jersey held in *Sinclair* that patients that had taken defective medicine, but had not suffered any physical harm, could not bring suit under the PLA even though they had incurred costs associated with monitoring the potential damage the defective medicine might have caused them. *Id.*

Additionally, the court in *Portee v. Jaffee*, required the following elements to be alleged for a cause of action involving the negligent infliction of emotional distress: (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress. 84 N.J. 88, 101, 417 A.2d 521, 528 (1980).

Defendant argues that Batchelor nor Eminence can sue for economic loss under the PLA because neither has alleged a personal physical injury.[3] Moreover, Defendant contends that Batchelor nor Eminence can sue for any alleged property damages because a claim for property damage under the PLA must involve "physical damage" to the property, not lost customers, sales, revenue, profit, income, etc. Finally, Defendant asserts that the alleged "physical/emotional/psychological" injury claimed by Batchelor does not result from her use of the products, but rather from the loss of the Customer Plaintiffs as patrons of Eminence. Therefore, Defendant argues, because Batchelor has not identified any law to suggest that a plaintiff may assert a claim under the PLA for emotional harm in the absence of any direct, physical harm to her caused by use of the product nor does her claim comply with the

---

[3] Defendants do not presently move to dismiss Counts I and II of Plaintiff's Amended Complaint with respect to the Customer Plaintiffs. (*See* Def. Opp. Br. at 5; FN 2).

requirements under NJ law if her alleged injury stems from the injury to the Customer Plaintiffs, Counts I and II must be dismissed.

Plaintiffs respond to Defendants contention by citing to case law for the proposition that a plaintiff may sue for defective product design and/or failure to warn that results in property damage, other than damage to the product itself. Plaintiffs contend that they are not suing for the lost value of the product itself nor the lost monies used to buy the product, but for the "unique property damage" to the business Batchelor owns and for the personal physical injuries Batchelor suffered.

As the Court held in its previous Opinion, a plaintiff must allege "personal physical injury" in order to sue for economic loss under the PLA. Moreover, the Court also held that none of the damages alleged by Plaintiffs are a result of the "physical damages done to Batchelor's property. Despite their chance to amend, Plaintiffs have stilled failed to sufficiently allege a personal physical injury suffered by Batchelor and Eminence and actual physical damage to Batchelor's property. Moreover, the Court finds that even if Batchelor or Eminence is trying to base her claim on the physical injury claimed by the Customer Plaintiff, this claim still fails because Batchelor and Eminence have failed to allege any of the required elements for negligent infliction of emotional distress as articulated by the court in *Portee.* Therefore, Counts I and II are dismissed with prejudice as to Plaintiffs Batchelor and Eminence.

## C.  Ascertainable Loss and Causation under the CFA

### a.  Ascertainable Loss

To state a claim of under the CFA, a plaintiff must allege that "the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot,*

507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994)).
Though the CFA has a broad scope, a plaintiff cannot recast a viable products liability claim as a
fraud claim under the CFA. *Sinclair*, 195 N.J. at 65-66 ("claims for harm caused by a product are
governed by the PLA irrespective of the theory underlying the claim . . . [D]espite the broad
reach we give the CFA, the PLA is paramount when the underlying claim is one for harm caused
by a product"). To establish ascertainable loss, a plaintiff "must suffer a definite, certain and
measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197
N.J. 543, 557 (2009); *see also Shelton v. Rest..com Inc.,* 543 F. App'x 168, 170 (3d Cir. 2013)
(explaining that plaintiffs must allege a "measurable loss" in order to survive a motion to
dismiss). A plaintiff must assert facts that show "either an out-of-pocket loss or a demonstration
of loss in value." *Dist. 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 530
(D.N.J. 2011). Furthermore, claims under the CFA are held to the higher pleading standard of
Rule 9(b) of the Federal Rules of Civil Procedure. *See Frederico*, 507 F.3d at 200.

Defendant argues that Batchelor and Eminence's claim under the CFA fails because both
have not properly pled ascertainable loss. Specifically, Defendant contends that Plaintiff has
improperly pled that the alleged losses "where proximately cause [sic] by the use and
consumption," not the purchase of the product. Moreover, Defendant asserts that Plaintiffs have
failed to offer facts to establish the alleged economic loss with sufficient particularity, including
the date when the Customer Plaintiffs stopped going to Eminence, how often they frequented
Eminence, etc.

Plaintiffs responds to Defendant's argument by stating that they have sufficiently pled
ascertainable loss in the Amended Complaint so as to give Defendant fair notice of the claim.
Plaintiff cites to case law for the proposition that a plaintiff need only set forth sufficient facts

that could be developed through discovery, which Plaintiffs contend they have done in the Amended Complaint.

Here, Plaintiffs again fail to plead the second element of a CFA claim with particularity. They allege that:

> That as a direct and proximate result of the foregoing, Plaintiffs [Batchelor] and [Eminence] sustained and suffered and continue to sustain and suffer ascertainable economic/monetary loss in value that exceeds $150,000.00 including but not limited to: the cost of buying Defendants' defective product' the loss of [Customer Plaintiffs] as clients/customers and the weekly, monthly and yearly revenue derived from said Plaintiff customers, the costs of the free hair services including free weaves, free deep conditioning and other free corrective hair services Plaintiffs [Batchelor] and [Eminence] provided to [Customer Plaintiffs] for the physical damage to their respective hair and the loss of other clients and potential clients as a direct and proximate result of the damage to Plaintiffs [Batchelor] and [Eminence]'s damaged reputation and business reputation as hair stylist and hair salon directly and proximately caused by the use and consumption of Defendants' defective product herein and/or employment of their methods, acts, practices and/or omissions set forth and alleged herein.

(AC at ¶ 87). Though their Complaint alleges that the customer Plaintiffs stopped frequenting Eminence Hair Design once they were injured by Defendants' product, it does not contain facts setting forth the alleged economic loss with particularity, as required under the higher pleading standard of Federal Rule of Civil Procedure 9(b) and as instructed by the Court in its previous Opinion. For example, it does not allege the date when the customers stopped going to Batchelor's hair salon, how much money they spent there, whether Batchelor herself suffered economic loss or if it was suffered by her business, or facts that demonstrate either an out-of-pocket loss or a demonstration of loss in value.

Because they have not alleged an ascertainable loss, Batchelor and Eminence have failed to plead a cause of action under the CFA. Thus, Count III of the Complaint is dismissed with prejudice as to Batchelor and Eminence.[4]

### D. Breach of Express Warranty

In order to establish a claim for breach of express warranty in New Jersey, a plaintiff must allege: "(1) that [the defendants] made an affirmation, promise or description about the product; (2) that this affirmation, promise, or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 721 (D.N.J. 2011) (citations omitted).

Defendant argues that the Breach of Express Warranty should be dismissed as to the Customer Plaintiffs because nowhere in the Amended Complaint do Plaintiffs assert that the Customer Plaintiffs bought the Product. The Court Agrees. Therefore, Count IV is dismissed with prejudice as to the Customer Plaintiffs.

Moreover, Defendant contends that the Claim should also be dismissed as to Plaintiffs Batchelor and Eminence because although the Amended Complaint alleges that Batchelor purchased the Product, it does not allege in what capacity Batchelor or Eminence bought the Product. Here, Plaintiff has sufficiently alleges that "[Batchelor] purchased on behalf of her company, [Eminence], Defendants' [Product]..." (AC at ¶ 110). This allegation is too ambiguous. Despite the Court's instruction in its previous Opinion, Plaintiffs have failed to sufficiently allege

---

[4] To state a claim under the Consumer Fraud Act, Plaintiffs must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011). Because the Court dismisses Plaintiff's CFA claim for failure to allege ascertainable loss, the Court declines to address whether Plaintiff's properly alleged the element of causation under the CFA in this Opinion.

who bought the Product, in what capacity it was bought, or whose funds were used to buy the product. Plaintiffs also fail to address this ambiguity in their Opposition Brief, despite Defendant's contention in support of the motion. The Court finds that Plaintiffs Batchelor and Eminence have not sufficiently alleged a Breach of Express Warranty claim. Therefore, Defendants motion to dismiss the Breach of Express Warranty against Plaintiffs Batchelor and Eminence is granted. Count IV as to Plaintiffs Batchelor and Eminence is dismissed with prejudice.

### E. Punitive Damages Under the PLA

The PLA generally prohibits the award of punitive damages. It states that:

> Punitive damages shall not be awarded if a drug or device . . . which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. §201 et seq. and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the Food and Drug Administration and applicable regulations, including packaging and labeling regulations.

N.J.S.A. 2A:58C–5(c). The statute contains one exception. That exception permits a plaintiff to seek punitive damages "where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the [FDA's] regulations." *Id.* Plaintiffs, however, have once again, not asserted any facts indicating or raising the reasonable inference that Defendants knowingly withheld from or misrepresented information to the FDA, or that Defendant's Product was required to be submitted under the FDA's regulations. Though Plaintiffs argue otherwise in their opposition brief, they once again do not cite to any supporting facts alleged in the Amended Complaint, as previously instructed by the Court in its previous Opinion. (Pl. Br., 37-39.) Therefore, Count V is dismissed with prejudice.

### IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss [CM/ECF No. 25] is granted. Counts I and II are dismissed with prejudice as to Plaintiffs Batchelor and Eminence. Count III is dismissed with prejudice as to Plaintiffs Batchelor Eminence. Count VI is dismissed with prejudice as to all Plaintiffs. Count V is dismissed with prejudice as to all Plaintiffs.

An appropriate Order accompanies this Opinion.

Dated: November 13, 2014

Jose L. Linares
United States District Judge